Argued January 30, reversed and remanded March 11, rehearing
denied April 1, 1919.

# SAMCHUCK  *v.*  INSURANCE  COMPANY  OF
NORTH AMERICA.

(179 Pac. 257.)

**Insurance—Fire Insurance—Burden of Proof.**

1. In action on fire insurance policy, insured has burden of
proving compliance with policy that formal proof of loss in strict
compliance with policy has been prepared, and that actual damages
have been suffered by the fire within the terms of the contract.

[As to burden of proof of breach of condition subsequent in
fire insurance policies, see note in Ann. Cas. 1913D, 829.]

**Insurance—Fire Insurance—Action on Adjustment—Burden of Proof.**

2. In action against insurer on an adjustment and agreement to
pay specified amount, where insurer admits adjustment and agreement
to pay, but claims that adjustment was induced by fraudulent repre-
sentations by insured, insurer has burden of proving facts sufficient to
overturn adjustment.

**Insurance—Fire Insurance—Adjustment—Fraudulent Misrepresenta-
tions.**

3. Fire insurance company, to avoid adjustment and agreement to
pay insured upon the ground that adjustment was made upon insured's
false statements in proof of loss, must not only prove that statements
in proof of loss were false, but that statements were fraudulently
made, and actually induced insurer to make adjustment.

**Pleading—Reply—Departure—Action on Insurance Adjustment.**

4. In action against fire insurance company upon adjustment and
agreement to pay insured, where defense was that adjustment was
procured by false statements in proof of loss that property was not
otherwise insured, reply, admitting duplicate insurance and alleging
knowledge and waiver on part of insurer, was not a departure from
the complaint; it being unnecessary in action on adjustment to plead
waiver in complaint.

**Insurance—Fire Insurance—Action upon Adjustment—Evidence of
Loss—Conclusiveness of Proof of Loss.**

5. In action against insurer upon adjustment and agreement to
pay fire loss, it was not error to overrule defendant's objections to evi-
dence as to value of the building and the amount of damage caused by
the fire, where the objection was based on the ground that the matter
was "concluded by the proof of loss," and according to plaintiff's
theory of the case, as presented by his pleadings and evidence, the
statement in the proofs of loss as to amount of loss suffered was put
there by defendant's adjuster, without plaintiff's knowledge.

**Insurance—Fire Insurance—Adjustment—Fraudulent Representations.**

6. Insured was not precluded from recovering upon adjustment and
insurer's agreement to pay, by reason of false statement as to other

insurance on property, inserted by insurer's adjuster in proof of loss which insured signed, where insured had no intention to deceive and insurer had full knowledge of the real facts and knew that statements were not true.

Trial—Instructions.

7.  Error cannot be based upon the refusal of an instruction, unless the whole instruction as applied to the case is good law and accurately stated.

Insurance—Fire Insurance—Question of Law—Materiality of Provision in Proof of Loss.

8.  The materiality of a representation in proof of loss is a question for the court.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

The plaintiff, Egnat Samchuck, according to the evidence, is an ignorant foreigner, and is not able to read or write except to sign his name.

The action is on a policy of insurance upon plaintiff's dwelling-house, insuring said property for the amount of $1,000. The policy was made in the year 1915, and was a renewal (with an increase) of a policy issued by the same company on the same property three years before.

After the fire the plaintiff notified the defendant, and the loss was adjusted, and the defendant agreed to pay the plaintiff the sum of $911.70 thereon, and drew a draft in plaintiff's favor for that sum.

However, there was, at the time of the fire, an outstanding insurance on the same property in favor of the plaintiff, in the "Oregon Fire Relief Association," for the sum of $800, and after the adjustment and making of the draft, the defendant, having discovered (as it claimed) the fact of this other insurance, stopped the draft and the same was never paid.

It is not entirely clear from the complaint whether the plaintiff intended to bring its action upon the original policy, or upon the final adjustment and agree-

ment to pay. It is thought, however, that the latter is the true construction of the complaint, and that the action is one upon the adjustment and final agreement to pay, and that the policy, the allegations as to the proof of loss, etc., are pleaded as inducement only.

The policy contained a provision that in case of other insurance, the policy should be void, and in the proofs of loss, which were signed and sworn to by the plaintiff, there appears a statement, that there was no other insurance on the property.

The defendant in its answer alleges that the adjustment and agreement to pay the $911.70 was obtained by fraud; that the defendant did not know and was not informed at the time that there was other insurance, and that it was induced to make the adjustment and execute the draft by the false representations contained in the proofs of loss, that there was no other insurance on the property.

The plaintiff in reply denies the fraud and the fraudulent representations, and alleges that at the time of the execution of the policy, and also at the time of the loss, the defendant had full knowledge of the other insurance.

The evidence on the part of the plaintiff tends to show that at the time the first and original policy was executed by the defendant, he took the policy in the other company to said defendant, and showed it to its officers and agents, and told them about it.

He also testified that the proofs of loss were prepared by the defendant's adjuster, and that he did not know at the time he signed and swore to them what they contained, and did not know or understand that they contained a statement that there was no other insurance. He further testified that he understood the $911.70 was not the total loss to the property, but was

the loss of this particular company; that his house was worth about $1,900, and that as he understood this $911.70 was the proportion which the defendant company expected to pay.

The defendant, on the contrary, offered testimony tending to show that plaintiff fully understood the statements in the proof of loss at the time they were made, and that the $911.70 covered the entire damage to the property, and that he also understood the representation that there was no other insurance. The verdict was for the plaintiff for the amount agreed upon in the adjustment, and from the judgment thereon the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondents there was a brief over the names of *Mr. F. S. Senn* and *Mr. Morris A. Goldstein,* with an oral argument by *Mr. Senn.*

BENNETT, J.—1, 2. This case being brought upon the adjustment, and resulting agreement to pay a certain specified'amount, must be distinguished from such cases as are brought to recover the amount of a loss or damage, directly upon the policy of insurance itself. In the latter case the burden would be upon the plaintiff to show that he had complied with the contract upon his part—that formal proofs of loss, in strict compliance with the policy of insurance, etc., had been prepared; and the actual damages that had been suffered by the fire, within the terms of the contract. But where the plaintiff alleges, and the defendant practically admits, that the loss had been adjusted, and that

the defendant had agreed to pay a certain sum, the burden of proof is reversed, and falls upon the defendant to show to the satisfaction of the jury, such facts as would overturn the adjustment.

3. The defendant attempts to do this, by asserting that it was induced to make the adjustment by false and fraudulent representations upon the part of plaintiff. It is obvious, under such conditions, that it would not be enough for the defendant to show merely false statements in the proof of loss. It would be necessary that it should go further, in order to relieve itself, and show that the false statements were fraudulently made, and actually induced the defendant to agree to the adjustment, on the basis of there being $911.70 due from the defendant. If, as contended by the plaintiff, the defendant had, at the time of the execution of the insurance policy, and at the time of the loss, full knowledge of the other insurance, it could not justly claim it was induced to make the adjustment, by reason of the false statement in the proof of loss; nor would the false statement have been fraudulent, since the defendant had full knowledge of the real truth at the time.

4. It is contended on behalf of the defendant, that the reply was a departure from the complaint, because it admits the duplicate insurance and alleges knowledge and waiver on the part of the defendant and it is urged that these allegations should have been contained in the original complaint. This might be true if the complaint had been directly on the policy, but where, as in this case, there has been an adjustment and an agreement to pay, and a suit is brought upon that agreement, it will not be necessary for the plaintiff in the first instance to set up any waiver; and the allegation of knowledge and waiver was properly presented in the reply, after the defendant had undertaken

in its answer to present the alleged false and fraudulent representations.

5. Assignments of error numbers 1 and 2 are based upon the overruling of objections interposed by the defendant to questions asked of different witnesses, as to the value of the building, and the amount of damage caused by the fire. The objection to these questions was based upon the ground that this matter was "concluded by the proof of loss." We do not think the objection is well taken. This evidence was offered in the plaintiff's direct case and was probably objectionable in the first instance, upon the ground that it was properly part of plaintiff's rebuttal, and not of his direct case, under the allegations of the pleadings, but no objection was made upon that ground, and we do not think, under the state of the pleadings, the statements in the proof of loss were conclusive upon the plaintiff.

The defendant requested the court to instruct the jury as follows, which instruction was refused and there was an exception:

"II. It is shown by the evidence that after the fire occurred, the plaintiff and the defendant agreed that the entire loss suffered by the plaintiff through the fire in question amounted to $911.70, and said agreement was reduced to writing and signed by the plaintiff Samchuck. Under the pleadings in this case the plaintiff is bound and concluded by that agreement, and the sum of $911.70 specified in said agreement must be taken by you as fixing the amount of the actual loss suffered by the plaintiff. It follows that in no event can you find for the plaintiff in a sum exceeding ten-eighteenths of $911.70, and if under the other instructions of the Court you find that the plaintiff is entitled to recover in this case, your verdict should be for the amount of $506.50."

We do not think there was any error in refusing this instruction. According to the theory of plaintiff under the pleadings and evidence presented in the case, the statement in the proofs of loss in question was put there by defendant's adjuster, without the knowledge of plaintiff; and under such circumstances the instruction could not properly have been given.

The fourth assignment of error is based upon an instruction asked for by the defendant, which, being long, we will not quote in full. Most of it embodies correct principles of law which would, no doubt, have assisted the jury in arriving at a conclusion in the case, however, it contained the following:

"If you find that at the time the plaintiff signed this proof, he knew it contained the statements above mentioned, then said statements were both false and fraudulent, and under the terms of the policy, such false and fraudulent statements would deprive the plaintiff of the right to recover any sum whatsoever from the defendant."

6. We think this was altogether too strong a statement of the law in defendant's favor. Where an action is brought upon an adjustment like this, plaintiff might have known that the statements alluded to were in the proofs of loss, and yet have had no intention to deceive, and if, as plaintiff contended, the defendant *had full knowledge of the real facts,* and knew that the statements therein were not true, and that there was another insurance, it would not necessarily defeat the right of plaintiff to recover.

7. In a long instruction like this one the court is not required to separate the good from the bad. It is well settled that before error can be based upon the refusal of an instruction, the whole instruction, as applied to the case must be good law and accurately stated.

Most of this instruction was fully covered by the general charge, and in any event it would have been error for the court to have given it in its entirety, as asked.

The fifth and sixth assignments of error are based upon the following instruction:

"(31). If you find from a preponderance of the evidence, as above outlined, that the statements so alleged to have been made by the plaintiff are material and untrue, and you further find that the statements were willfully and knowingly and intentionally made by Samchuck, with knowledge of their falsity, the intention to deceive the defendant insurer would necessarily be implied, and need not be proved by positive evidence, for the law presumes every man to intend the natural consequences of his act; and, as stated, if you find these facts last alleged, by a preponderance of the evidence, then in that event the plaintiff cannot recover in this action against the defendant, as such facts so established would invalidate and avoid the contract upon which plaintiff brings his action."

8. To the giving of this instruction the defendant excepted at the time because "it submitted to the jury as a question of fact, whether or not the representations contained in the proof of loss were material." It is thought this assignment of error must be sustained. It is well settled in this court that the materiality of a provision in a contract like this is for the court.

The instruction in question is somewhat involved, and except for this one fault, is quite favorable to the defendant. It may have been the intention of the court to qualify the first clause, submitting to the jury the materiality of the false statements, and to convey to the jury an unqualified direction to find for the defendant, if the statements were willfully and knowingly made with knowledge of their falsity and with intention to deceive the defendant. It is possible the instruction did not actually mislead the jury. Still we

cannot say affirmatively that this was so. The instruction was challenged, and the court's attention called to it, by an exception on this very ground, at the time it was given, and the court did not correct it, and we are compelled to adjudge it reversible error.

Exceptions were also made to the following instructions:

"(34). If, on the other hand, you find from the evidence that no such condition of affairs exists, and that the total loss has not been fully defined and described in the proof of loss, then you would have a right to resort to the other evidence in the case. But, as I stated to you before, if the parties have committed their findings and their estimates to writing in this document known as the proof of loss, then the plaintiff would be concluded by the statements therein.

"(35). So that, gentlemen of the jury, the question narrows down to the consideration, first, whether or not the plaintiff falsely, knowingly and willfully, made a statement in contravention of this contract of insurance, the provisions and conditions of which are fully set forth in these pleadings. If he did so, you need not give the case further consideration and you should return a verdict for the defendant. If, on the other hand, you do not so find, then you would be entitled to bring in a verdict for the plaintiff, which should be five-ninths of the amount of the loss, as shown by the evidence, together with interest thereon from the twenty-seventh day of March, 1914, the date of the fire."

We think these instructions are quite fair and, if anything, rather favorable to the defendant. Indeed, it seems to us that, with the one exception hereinbefore referred to, the case was submitted to the jury by the court below with a great deal of care.

Reversed and remanded to the court below for a new trial.

REVERSED AND REMANDED.    REHEARING DENIED.

McBride, C. J., and Bean and Johns, JJ., concur.